UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

  Plaintiff,

  v.                                                    Case No. 20-CR-162-PP-SCD

ETHAN T. MASSEY,

  Defendant.

**ORDER DENYING DEFENDANT'S REQUEST FOR A *FRANKS* HEARING AND REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Law enforcement executed a warrant to search Ethan T. Massey's residence for drug evidence. They found more than a pound of methamphetamine, over $10,000 in cash, a handgun, and ammunition. The United States subsequently charged Massey and others with involvement in a drug-trafficking conspiracy. Massey has moved to suppress the evidence seized from his residence and all derivative evidence, arguing that the investigator who submitted the search-warrant affidavit misrepresented the facts. Specifically, Massey asserts that the officer falsely claimed to have obtained information about possible drug activity at Massey's residence after listening to recorded jail calls between Massey and an inmate incarcerated for drug-related offenses. He seeks a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to explore the validity of the search-warrant affidavits. The government opposes the motion.

Because Massey has failed to make a substantial preliminary showing that the residence search was unlawful under *Franks*, he is not entitled to a hearing to challenge the

veracity of the affidavit that law enforcement used to procure the warrant. Moreover, the totality of the circumstances demonstrate that the issuing judge had a substantial basis for concluding that the search-warrant affidavit established the requisite probable cause for a warrant. I will therefore recommend that Massey's motion to suppress be denied.

## BACKGROUND

In Spring 2019, law enforcement began investigating a methamphetamine distribution network operating out of Sheboygan. ECF No. 48 at 2. Jarrod R. Fenner, a Sheboygan County Sheriff's Deputy assigned to the Sheboygan County Multi-Jurisdictional Enforcement Group, assisted in the investigation. *Id.* at 3. The police identified Chad Cisler as one of the early targets of the investigation. *Id.* at 2–3. On March 19, 2019, the police used a confidential informant to conduct a controlled buy of methamphetamine from Cisler at his residence. *Id.* at 3. Following a second controlled buy on March 21, 2019, law enforcement searched Cisler's residence pursuant to a warrant. They seized cash—including some of the previously recorded buy money—packaging materials, a digital scale, and about three grams of methamphetamine. Cisler was arrested and interviewed by investigators. *Id.* at 3–4. He admitted to selling methamphetamine to supplement his income. *Id.* at 4.

After that arrest, the investigation shifted to identifying Cisler's methamphetamine source. *Id.* Investigator Fenner reviewed Cisler's recorded jail calls for April 2019 and noted that he frequently phoned an individual who identified himself on one of the calls as "Ethan Massey," the defendant here. *See* ECF No. 42 at 24–34.[1] There were three calls on April 2, 2019. *See id.* at 28. During those calls, Massey asked Cisler if he received "that money I put on your books," meaning his inmate account. *Id.* Cisler confirmed that he had, and Massey

---

[1] Investigator Fenner authored a report concerning his investigation on May 13, 2019. *See* ECF No. 42 at 24.

stated that he had "another person I gotta send money to too." *Id.* Massey told Cisler he was "sorry how things worked out the way it did" and assured that "I got you all the way, all the way that I can." *Id.* He also asked Cisler if he gave a statement to or was cooperating with the police. *Id.* After Cisler indicated that he was in the same jail pod as an inmate named Sebastian, Massey stated, "well see that's the thing, he's been getting from us to[o] but there are so many people, explain to him there are so many people, that we are trying to take care of everyone." *Id.*

Investigator Fenner also listened to calls Cisler made to Massey on April 3, April 14, April 19, and April 21, 2019. *See id.* at 28–29. During those calls, Massey again asked Cisler if he was talking with the police and if "there [was] anything I can do for you." *Id.* Cisler requested more money for his account. *Id.* at 29. The two also discussed Cisler releasing his debit card to Massey. *Id.* During the call on April 21, Cisler expressed his desire to "get the fuck out of here." *Id.* Massey responded, "[Y]eah, I know buddy, we always knew there was a price to pay, you know what I mean, for what we do, you know what I'm saying, to be honest, we've gotten away with it for a long time, for whatever, you know, partying and shit . . . so it's bound to catch up, we gotta pay to play." *Id.*

After reviewing the jail calls, Investigator Fenner used DOT and other records to find Massey's current address: 2205 N. 11th Street, Sheboygan, Wisconsin. *Id.* at 26. Through this investigation, he learned that April Detrick also resided at that address. *Id.*

At Investigator Fenner's direction, on May 13, 2019, sanitation workers collected Massey and Detrick's curbside garbage and turned it over to the police. *Id.* at 26. The trash receptacle contained three bags. In the first bag, Fenner found a small amount of a green leafy substance that smelled like raw marijuana, a small "roach"—that is, the end of a marijuana

3

blunt—that smelled of burnt marijuana, a cigar wrapper, loose cigar-like tobacco, a plastic bag corner "tie off" that contained a light white residue, two packages sent to Detrick, and a mini-SD card. *Id.* at 26–27. The green leafy substance and the roach tested positive for tetrahydrocannabinol (THC), the main psychoactive chemical found in marijuana. *Id.* at 27. The white residue tested positive for methamphetamine. *Id.* The second bag contained some loose green leafy material that smelled of raw marijuana, two cigar roaches that smelled of burnt marijuana, two plastic bag tie offs, a broken glass bottom of what looked like a marijuana bong, and two mailings for Detrick. *Id.* Again, the green leafy substance and one of the roaches tested positive for THC. *Id.* In the third bag, Fenner found a plastic sandwich bag with one of the bottom corners cut off, a THC vape cartridge package, a package for a vape pen designed to look like a set of keys, a cigar wrapper, and two mail items sent to Detrick. *Id.*

On May 14, 2019, Investigator Fenner applied for a warrant to search Massey and Detrick's residence for evidence relating to the possession of methamphetamine and THC. *See* ECF No. 42 at 18–23. He submitted a four-page affidavit in support of his search-warrant application. *See* ECF No. 42 at 20–23. The affidavit indicates that Fenner had eighteen years of experience in law enforcement and that the affidavit is based on Fenner's own investigation, "as well as information provided orally and/or via police reports from officers identified in [the] affidavit." *Id.* at 20. Paragraph three of the affidavit, which is the focus of Massey's motion, reads as follows:

> Your Affiant obtained information regarding possible drug activity at 2205 N 11th Street, in the City and County of Sheboygan, State of Wisconsin. While completing another investigation, Your Affiant was listening to jail phone calls and learned of the possible drug activity at 2205 N. 11th Street. Your Affiant reviewed in-house records, which he has used in the past and found to be accurate and reliable, which showed Ethan Massey at this residence. This was

4

also confirmed through WI D.O.T. which Ethan has 2205 N 11th Street as his home address.

*Id.* The affidavit also describes the items collected the day prior from the residence's trash. *See id.* at 20–22. Fenner notes that, in his experience, drug dealers often package drugs for sale in corner tie offs like the ones found during the trash pull. *Id.* at 21. Finally, Fenner lists the places to be searched and the items to be seized, explaining how, in his experience, those items are typically used by individuals who possess controlled substances. *Id.* at 22–23.

Susan M. Schaubel, a court commissioner with the Sheboygan County Circuit Court, authorized the warrant the same day Investigator Fenner submitted his warrant application and affidavit. *See* ECF No. 42 at 18–19. The warrant permitted law enforcement to search Massey and Detrick's residence for evidence relating to the possession of methamphetamine and THC. The police executed the warrant on May 17, 2019, and, as noted earlier, they seized numerous identifiers for Massey and Detrick, over $10,000 in cash, more than a pound of methamphetamine, a loaded handgun, and two boxes of ammunition. *See* ECF No. 48 at 5.

On September 9, 2020, a grand jury sitting in the Eastern District of Wisconsin indicted Massey and six others for knowingly and intentionally conspiring to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), (C), (D), and 846. *See* ECF No. 1. Massey was arraigned on the charges and entered a plea of not guilty. *See* ECF No. 22. The matter is assigned to U.S. District Judge Pamela Pepper for trial and to me for resolving pretrial motions. *See* 28 U.S.C. § 636; Fed. R. Crim. P. 59; E.D. Wis. Gen. L. R. 72. The case has not yet been scheduled for trial.

On June 25, 2021, Massey filed a motion to suppress evidence and a request for a *Franks* hearing. *See* ECF Nos. 41, 42. The government responded to the motion on July 16, 2021. *See* ECF No. 48. On July 30, 2021, Massey submitted his reply. *See* ECF No. 53.

5

## DISCUSSION

Massey argues that the warrant to search his residence is invalid because Investigator Fenner's affidavit contains affirmative misrepresentations and, absent that misinformation, the warrant is not supported by probable cause. He requests a *Franks* hearing to prove the invalidity of the warrant and, ultimately, an order suppressing all evidence recovered and derived from that search.

### I. Applicable law

#### A. *Franks v. Delaware*

A defendant is entitled to a *Franks* hearing only if he makes "a 'substantial preliminary showing' that: (1) the affidavit contained a material false statement; (2) the affiant made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of probable cause." *United States v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001) (quoting *Franks*, 438 U.S. at 155–56)). "*Franks* makes it clear that affidavits supporting a search warrant are presumed valid, and that the 'substantial preliminary showing' that must be made to entitle the defendant to an evidentiary hearing must focus on the state of mind of the warrant affiant"—that is, the law enforcement officer who sought the search warrant. *United States v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000) (citing *Franks*, 438 U.S. at 171). The inquiry is "not whether the affidavit contains a false statement, but whether the affiant knew or should have known that a statement was false." *United States v. Schultz*, 586 F.3d 526, 531 (7th Cir. 2009) (citing *Jones*, 208 F.3d at 603).

Consequently, "[t]he defendant must offer evidence showing either that the warrant affiant lied or that the warrant affiant recklessly disregarded the truth because he 'in fact entertained serious doubts as to the truth of his allegations' or had 'obvious reasons to doubt

6

the veracity of the allegations.'" *Jones*, 208 F.3d at 607 (quoting *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984)). To meet this "substantial" burden, the defendant must make allegations, accompanied by an offer of proof, that are "more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171. "The defendant must identify specific portions of the warrant affidavit as intentional or reckless misrepresentations, and the claim of falsity should be substantiated by the sworn statements of witnesses." *United States v. McMurtrey*, 704 F.3d 502, 509 (7th Cir. 2013) (citing *Franks*, 438 U.S. at 171). "To obtain a hearing, the defendant must also show that if the deliberately or recklessly false statements were omitted, . . . probable cause would have been absent." *McMurtrey*, 704 F.3d at 509 (citing *Franks*, 438 U.S. at 171–72). Accordingly, "*Franks* hearings are rarely required." *United States v. Johnson*, 580 F.3d 666, 670 (7th Cir. 2009) (citing *Maro*, 272 F.3d at 821).

  **B.** **Probable cause**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003). "A search warrant affidavit establishes probable cause when it 'sets forth facts sufficient to induce a reasonable prudent person to believe that a search thereof will uncover evidence of a crime.'" *Jones*, 208 F.3d at 608 (quoting *United States v. McNeese*, 901 F.2d 585, 592 (7th Cir. 1990)).

In deciding whether an affidavit establishes probable cause, "courts must use the flexible totality-of-the-circumstances standard set forth in *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983)." *McNeese*, 901 F.2d at 592. Applying the totality-of-the-circumstances standard, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. "[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts." *Gates*, 462 U.S. at 232. Thus, "[i]n dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States,* 338 U.S. 160, 175 (1949). "Probable cause denotes more than mere suspicion, but does not require certainty." *United States v. Anton*, 633 F.2d 1252, 1254 (7th Cir. 1980).

The court's duty in reviewing a search warrant and its supporting materials is limited to ensuring "that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." *Gates*, 462 U.S. at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). In other words,

> a magistrate's determination of probable cause is to be "given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated."

*United States v. Pritchard*, 745 F.2d 1112, 1120 (7th Cir. 1984) (quoting *United States v. Rambis*, 686 F.2d 620, 622 (7th Cir. 1982)). Even "doubtful cases should be resolved in favor of upholding the warrant." *Rambis*, 686 F.2d at 622.

8

II. Analysis

Massey maintains that Investigator Fenner affirmatively misrepresented the truth when he claimed in paragraph three of the affidavit that he "obtained information regarding possible drug activity at 2205 N 11th Street, in the City and County of Sheboygan, State of Wisconsin." ECF No. 42 at 20. Fenner also stated, "While completing another investigation, Your Affiant was listening to jail phone calls and learned of the possible drug activity at 2205 N. 11th Street." *Id.* The jail calls Fenner listened to do not reference any drug activity at the 11th Street residence. In fact, the conversations do not mention the residence at all. Accordingly, Massey argues that Fenner lied when he stated that he learned about drug activity at that location.

A. The Complained-of Statement is Not "False"

Massey has failed to make a substantial preliminary showing warranting a *Franks* hearing because he has not demonstrated that the warrant affidavit contains an affirmative misrepresentation. Although it may be true that the jail calls didn't specifically discuss Massey's residence on 11th Street, Investigator Fenner could still truthfully state that the jail calls had tipped him to "possible" drug activity at Massey's address. Why? Because the calls indicated that Massey was involved with drugs, and "the Seventh Circuit has repeatedly and consistently stated that 'in the case of drug dealers, evidence is likely to be found where the dealers live.'" *United States v. Johnson,* No. 20-CR-214, 2021 U.S. Dist. LEXIS 56435, 2021 WL 1139841, at *5 (E.D. Wis. Mar. 25, 2021) (collecting cases) (quoting *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991)). Fenner, an experienced police officer, was simply making the same logical conclusion that courts make all the time, namely, that since Massey was a drug dealer, it was reasonable to conclude that evidence of drug dealing or use

would be found at his home, which Fenner eventually learned was on 11th Street. In sum, once an officer develops reason to believe that an individual is involved with illegal drugs, under these circumstances it's not misleading to tell a judge that there is likely to be evidence of "drug activity" at the dealer's home, particularly when he merely indicates that there is "possible" drug activity there. Nothing about the complained-of statement is false.

To be sure, the calls clearly establish Massey in the drug business. While Cisler was in jail on drug-related charges, he called Massey at least seven times in twenty days, including multiple calls on the same day. During those calls, Massey apologized to Cisler for Cisler's incarceration, told Cisler that he had his back, and seemed very concerned about whether Cisler provided a statement to or was cooperating with the police. Massey also was giving Cisler (and others) money while he was in jail. Those calls suggest that Massey was involved with Cisler in the drug trade.

Also, Massey essentially confirmed his involvement during two of the calls. First, when Cisler indicated that he was in jail with an inmate named Sebastian, Massey stated, "he's been getting from us to[o] but there are so many people . . . we are trying to take care of." ECF No. 42 at 28. Massey claims this statement was taken out of context; on the call, he explicitly stated he was referring to money for commissary, not drugs. If true, that doesn't help Massey much. It would have been reasonable for Investigator Fenner to infer that Massey was providing money to Cisler and other incarcerated individuals like Sebastian to buy their silence. Second, on a later call, Massey told Cisler, "[W]e always knew there was a

10

price to pay . . . for what we do . . . . [T]o be honest, we've gotten away with it for a long time, . . . so it's bound to catch up[.] [W]e gotta pay to play." *Id.* at 29.[2]

In sum, the jail calls allowed Investigator Fenner to conclude that Massey was trafficking drugs. From that it follows that he could also conclude, and truthfully state, that there was "possible" drug activity at Massey's home. Because Fenner was able to make and relate the same logical conclusion that courts make all the time—that evidence of drug dealing could be found at the dealer's home—Massey has not established the right to a *Franks* hearing.

B.   **Even if Fenner's Statement were Misleading, it was not Material**

To be entitled to a *Franks* hearing, the defendant must show that the misleading statement was material to the probable cause finding. *Maro,* 272 F.3d at 821 (citing *Franks*, 438 U.S. at 155–56). To be material, information must have been a significant but-for factor in the issuing judge's decision: a reviewing court "considers the affidavit, eliminating any false statements and incorporating omitted material facts, and determines whether probable cause existed" even without the misleading fact. *United States v. Harris,* 464 F.3d 733, 738 (7th Cir. 2006); *United States v. Clark,* 935 F.3d 558, 565 (7th Cir. 2019) (citing examples of cases with misleading information or omissions but denying *Franks* hearings where the information was corroborated elsewhere in the affidavits).

Here, the offending third paragraph involves the suggestion that jail calls had revealed possible drug activity at N. 11th Street. But even if we eliminate that sentence, the affidavit would still have supplied probable cause for the search. As recounted above, several

---

[2] Massey claims the transcript of that call is incorrect: he said, "*you've* gotten away with it for a long time," not "we've." But again, even if that is true, the context of the entire call suggests that Massey and Cisler worked together to traffic drugs—Massey does not claim that any of the other references to "we" were inaccurately transcribed (nor does Massey identify any other alleged inaccuracies in the call summaries).

11

paragraphs describe the drug evidence actually found in the trash pull taken from the 11th Street residence. Paragraph 5 describes a "tie off" with "light residue," which later tested positive for methamphetamine. ECF No. 42 at 21, 22. Investigator Fenner stated that it was "his experience that this is the way some drugs are packaged for sale." *Id.* Paragraph 6 also describes finding two tie-offs in a second garbage bag, which are "typical . . . for the sale of illegal drugs." *Id.* at 21. Finally, in the third bag, Fenner found "a plastic sandwich bag with one of the bottom corners cut off." *Id.* This, in his experience, was "the by-product of a sandwich bag used in the packaging of drugs for sale." *Id.* Fenner also found hollowed-out cigars, a "roach" with the "distinct odor of burnt marijuana," and some "loose green leafy material." *Id.* All this evidence, which police uncovered from the 11th Street residence, strongly connects illegal drug activity to that residence. In fact, the trash pull evidence is far more specific and inculpating evidence than the conclusory suggestion in paragraph three that Fenner learned about drug activity at the residence from phone calls. Accordingly, even if the offending sentence in paragraph three were misleading, it was wholly immaterial to the probable cause finding.

Massey argues that a single trash pull would not suffice to create probable cause. But that's not what we have here. Instead, we have a police officer stating that he learned of drug activity while listening to jail phone calls (even if we eliminate the part about drug activity at 2205 N. 11th Street), which was then *confirmed* by the trash pull at the residence. That's more than enough to create probable cause. Moreover, Massey has not cited any binding authority to support his argument that a single trash pull alone cannot establish probable cause to search an individual's residence. The Seventh Circuit upheld the searches in all the cases Massey cited and in one of those cases it explicitly noted that "[n]o Seventh Circuit case has addressed

12

whether trash pulls *by themselves* may establish probable cause to search a residence." *United States v. Leonard*, 884 F. 3d 730, 734 (7th Cir. 2018). Also, unlike in the cases cited by Massey, the warrant here sought evidence relating to the *possession* of controlled substances. Given the evidence recovered during the trash search—including small amounts of marijuana, methamphetamine residue, and drug paraphernalia—the issuing judicial officer had a substantial basis for concluding there was a fair probability that more drug evidence would be found inside that residence the following day.

## CONCLUSION

For all the foregoing reasons, Ethan T. Massey's request for a *Franks* hearing, *see* ECF No. 41, is **DENIED**, and it is **RECOMMENDED** that Massey's motion to suppress evidence, ECF No. 41, be **DENIED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A), (B), and (C), Fed. R. Crim. P. 59(a) and (b)(2), and E.D. Wis. Gen. L. R. 72(c), whereby written objections to any order or recommendation herein, or part thereof, may be filed within fourteen days of the date of service of this order and recommendation or prior to the final pretrial conference, whichever is earlier. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district judge shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the district judge in writing.

Dated at Milwaukee, Wisconsin, this 10th day of August, 2021.

_____
STEPHEN C. DRIES
United States Magistrate Judge