UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

                                        Case No. 20-cr-162-pp

    v.

ETHAN T. MASSEY,

                Defendant.

**ORDER AFFIRMING MAGISTRATE JUDGE'S ORDER DENYING REQUEST FOR FRANKS HEARING (DKT. NO. 58), OVERRULING DEFENDANT'S OBJECTIONS TO RECOMMENDATION (DKT. NO. 60), ADOPTING RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DKT. NO. 58), DENYING DEFENDANT'S MOTION TO SUPPRESS (DKT. NO. 41) AND REQUIRING PARTIES TO FILE STATUS REPORT**

      On June 21, 2021, the defendant filed a motion to suppress all evidence and derivative evidence obtained from a warrant executed at his residence. Dkt. No. 41. According to the defendant, the affidavit that the investigator filed in support of the warrant contained misrepresentations about reviewing jail calls. Id. The defendant argued that if the court removed the misrepresentations from the affidavit, the remaining evidence—taken from a garbage pull—could not establish probable cause. Id. The defendant asked for a Franks hearing, as well as an order suppressing evidence. Dkt. No. 42 at 17.

      Magistrate Judge Stephen Dries found that the defendant failed to make a substantial preliminary showing under Franks that the search of the residence was unlawful and concluded that the totality of the circumstances

1

demonstrated that the issuing judge had a substantial basis for believing the affidavit established probable cause. Dkt. No. 58 at 1-2. At the end of the order and recommendation, Judge Dries instructed the parties to file objections within fourteen days and to indicate, in writing, if no response or reply would be filed. Id. at 13. The defendant timely filed an objection on the fourteenth day, dkt. no. 60; the government did not file a reply brief or otherwise indicate in writing that it would not be filing a reply.

I.     **Background**

According to the government, in early spring 2019, the Sheboygan County Multi-Jurisdictional Enforcement Group (MEG) started investigating a methamphetamine distribution network. Dkt. No. 48 at 2. At the time, Sheboygan County Sheriff's Deputy Jarrod R. Fenner was a member of the MEG Unit. Id. One of the targets of the investigation was Chad Cisler, and Fenner assisted in investigating Cisler. Id. at 2-3.

On March 19 and March 21, 2019, the MEG unit used a confidential information to make two controlled buys of methamphetamine from Cisler at his home on Carl Avenue in Sheboygan. Id. at 3. Fenner was briefed on, and assisted in, both buys. Id. After the second controlled buy, the unit obtained a state warrant to search Cisler's residence; Fenner assisted in the search. Id. Officers seized $1,233 from Cisler, some of which was buy money from the controlled buys; in the residence, investigators found packaging materials, a digital scale and about three grams of methamphetamine. Id. When

2

investigators later interviewed Cisler, he admitted to selling methamphetamine. Id. at 3-4.

To try to determine where Cisler was obtaining the methamphetamine, Fenner began reviewing the phone calls Cisler was making from jail. Id. at 4. He reviewed calls between Cisler and the defendant that took place between April 2 and April 22, 2019. Id. Fenner was able to identify the defendant during an April 19, 2019 jail call, because the defendant identified himself and spelled his last name for Cisler so that a debit card that was in Cisler's inventoried property at the jail could be released to the defendant. Id.

On May 13, 2019, Fenner completed a Sheboygan County MEG Incident Report. Dkt. No. 42 at 24-34. In that report, Fenner summarized eight of the phone calls he'd heard between Cisler and the defendant. Id. During one of the three calls that Cisler placed on April 2, 2019, the defendant asked Cisler if Cisler had received "that money I put on your books." Id. at 28. Cisler confirmed he had received the money and thanked the defendant. Id. The defendant asked Cisler whether "they" had "drive[n]" on Cisler "big time," but Cisler responded that he "didn't even want to talk to them." Id. The defendant asked Cister whether he had told "them that you wanted an attorney," and told Cisler, "I got you all the way, all the way that I can," asking whether Cisler needed money for canteen. Id.

Later that same day, Cisler told the defendant that he was in a pod with "Sebastian," and the defendant responded:

> ask him, um, well, see that's the thing, he's been getting from us to but there are so many people, explain to him there are so many

3

people, that we are trying to take care of everyone, but you just gotta get in there, so, Sebastian should look after you if he knows that your [sic] my brother."

Id.

During a third call on April 2, the following exchange occurred:

DEFENDANT:      Damn bro, I'm sorry how things worked out the way it did man.

CISLER:          Yeah, its crazy shit.

DEFENDANT:      Yeah wish there was a way . . . .

CISLER:          these fucking Meg dudes . . . .

DEFENDANT:      huh

CISLER:          they were wailing at my door trying to bust it down, I grabbed everything and went into the bathroom and started flushing everything (laughs)

CISLER:          I got rid of what I could of, you know, right before, I would been in the shit (laughs), I would have had a lot more on me

DEFENDANT:      Right

DEFENDANT:      You said you did not cooperate right

CISLER:          No, I didn't cooperate or speak to them or anything.

Id.

The following day—April 3, 2019—the defendant and Cisler had another conversation. Id. They discussed whether the police were "on the phones," theories about why Cisler got caught, what else the police might be thinking and whether the police had gotten Cisler's phone. Id. The defendant told Cisler to "stay strong with them boys so that's all that matters, alright." Id. He

4

clarified that he was talking about the police. Id. The defendant asked Cisler several times things like, "I didn't know if they tried to milk you and tried to milk you like a cow," "They didn't try to call you out or anything," they didn't try to talk to you that day," and when Cisler responded in the negative, the defendant said, "yeah, good for you buddy." Id.

A little over a week later, on April 14, 2019, the two had another call; the defendant asked Cisler if there was anything the defendant could do for him, and Cisler asked the defendant if he could put some money on Cisler's books. Id. at 29. The defendant commented that Cisler had blown through "that $100 already." Id. Five days later, the two had another call in which the defendant instructed Cisler to ask the guards for a release form, spelling out his name for Cisler so that the officers would release Cisler's debit card to the defendant. Id.

The report indicates that seven days later, the following exchange took place:

| CISLER: | I'm hoping to get that drug shit court comes through soon so I can get the fuck out of here |
| DEFENDANT: | yeah, I know buddy, we always knew there was a price to pay, you know what I mean, for what we do, you know what I'm saying, to be honest, we've gotten away with it for a long time, for whatever, you know partying and shit |
| CISLER: | right |
| DEFENDNT: | so it's bound to catch up, we gotta pay to play. |

Id.

Fenner explained in the report that he used Department of Transportation and "in house" records to records to identify 2205 N. 11th Street, Sheboygan as the defendant's current address, and to learn that April Detrick also resided at that address. Id. at 26.

The report indicated that on May 13, 2019, Fenner obtained the assistance of the City of Sheboygan Department of Public Works to do a curbside garbage pull. Id. He coordinated with DPW to find out when they would be in the area of the defendant's house and watched as they pulled the garbage from the curb and put it into the right hopper of the garbage truck. Id. After the truck pulled around the corner from the defendant's house, the garbage was picked up and taken to the police impound shed. Id.

The report indicated that there were three bags of garbage that contained evidence. Id. Bag 1 contained a small amount of a green leafy substance (which in Fenner's training and experience had the odor of marijuana), a marijuana roach (the end of a cigar used to hold marijuana for smoking) that smelled of burnt marijuana, a plastic bag corner "tie off" with light white residue, identifiers of mailing packages sent to April Detrick and a mini SD (secure digital) card. Id. at 26-27. In Bag 2, Fenner discovered a loose, green, leafy material with an odor of raw marijuana, two cigar roaches, two plastic bag tie offs, a broken orange and yellow glass bottom which he believed to have been a bong, and identifiers linked to April Detrick. Id. at 27. Bag 3 contained a plastic sandwich bag with one of the bottom corners cut off, a vape cartridge package which indicated that the cartridge contained 97% THC level, a "Clout KI"

6

package (a Clout KI is a vape pen designed to look like a set of keys), a cigar wrapper and two mail items sent to Detrick. Id.

The report indicated that the green leafy substances and roaches from Bag 1 and Bag 2 tested positive for the presence of THC and the white residue in the plastic tie-off found in Bag 1 tested positive for methamphetamine. Id.

The next day—May 14, 2019—Fenner filed a four-page, sworn affidavit in support of the application for a warrant to search the defendant and Detrick's house. Id. at 20. The affidavit averred that Fenner had eighteen years of experience in law enforcement and currently was involved in an investigation into possession of methamphetamine, in violation of Wis. Stat. §961.41(3g)(e). Id. at ¶¶1-2. The affidavit included the following paragraph:

> 3.      Your Affiant obtained information regarding possible drug activity at 2205 N. 11th Street, in the City and County of Sheboygan, State of Wisconsin. While completing another investigation, Your Affiant was listening to jail phone calls and learned of the possible drug activity at 2205 N. 11th Street. Your affiant reviewed in-house records, which he has used in the past and found to be accurate and reliable, which showed [the defendant] at this residence. This was also confirmed through WI D.O.T. which [the defendant] has 2205 N. 11th Street as his home address.

Id. at ¶3. Fenner described the items he had collected from the garbage pull the day before he filed the affidavit. Id. at ¶¶4-9. Fenner stated that it was his experience that a plastic bag corner tie-off like the one he'd found in Bag 1 "is the way some drugs are packaged for sale." Id. at ¶5.

Sheboygan Circuit Court Commissioner Ryan O'Rourke found probable cause and signed the search warrant on May 14, 2019, authorizing the search of the premises at 2205 N. 11th Street. Id. at 18. Law enforcement executed the

search warrant on May 17, 2019. Dkt. No. 42 at 6. The government reported that in a camera case in the northeast bedroom officers found $7,500 in cash; in a gray backpack in the closet was another $1,500 in cash; in a dresser was a baggie with a white, crystalized substance that field tested positive for methamphetamine weighing .82 grams; and inside a safe was a loaded .380 caliber gun, two boxes of ammunition and approximately $1,800 in cash. Dkt. No. 48 at 5. Officers found more methamphetamine in two Tupperware containers inside a backpack in another bedroom. Id. at 5. The total weight of the methamphetamine was 1.22 pounds. Id. The northeast bedroom contained identifiers for both the defendant and Detrick, and Detrick told the officers that she shared that bedroom with the defendant. Id. at 5-6.

On September 9, 2020, the grand jury returned an indictment charging the defendant and six others with knowingly and intentionally conspiring to distribute 500 grams or more of a mixture and substance containing methamphetamine, a Schedule I controlled substance, and a mixture or substance containing cocaine, a Schedule II controlled substance, in violation of U.S.C. §§841(a)(1), 841(b)(1)(A), (C) and 846 and 18 U.S.C. §2. Dkt. No. 1.

## II.    Motion to Suppress

### A.    Defendant's Arguments (Dkt. No. 41)

The defendant moved to suppress all evidence obtained from the warrant executed on 2205 N. 11th Street, Sheboygan, Wisconsin. Dkt. No. 41 at 1. He also asked the court to conduct a Franks hearing to determine whether Fenner provided false statements or affirmative misrepresentations. Id.

8

In his brief, the defendant argued that Fenner's affidavit contained affirmative misrepresentations about the jail calls revealing possible drug activity at 2205 N. 11th Street. Dkt. No. 42. The defendant argued that the court must strike the portion of the warrant affidavit that contained the alleged affirmative misrepresentation, id. at 7, and asserted that once the court had done so, the only remaining content of the affidavit would be the evidence from the May 13, 2019 trash pull, which he asserted could not establish probable cause, id. at 8.

The defendant asserted that paragraph three of Fenner's affidavit contained the alleged affirmative misrepresentation. Id. The defendant focused on Fenner's statement in paragraph three that he "was listening to jail phone calls and learned of the possible drug activity at 2205 N. 11th Street." Id. at 8. The defendant asserted that reading that portion of paragraph three, "the unambiguous interpretation [was] that law enforcement listened to jail calls, and in those jail calls there was information that drug activity was occurring at the residence of 2205 N. 11th street, and that after receiving that information, law enforcement—by using law enforcement tools—determined that [the defendant] lived at that residence." Id. at 8-9. The defendant asserted, however, that "out of the approximate two hours that Cisler and the defendant spoke, there is no information regarding possible drug activity at 2205 N. 11th Street" in Sheboygan. Id. at 9. He argued that the summary of the April 19, 2019 phone call that Fenner provided in his report was inaccurate; he asserted that the actual recording—which he has not provided to the court—captures the

9

defendant saying to Cisler, "*you've* gotten away with it for a long time," rather than "*we've* gotten away with it for a long time." Id. (emphasis added). The defendant argued that Fenner's characterization that he was listening to jail phone calls and learned of possible drug activity at 2205 N. 11th Street, when he knew that the jail calls contained no mention of that address, constituted a "gross misstatement of the facts" and that the statement "evidently was made either knowingly or with a reckless disregard for the truth." Id.

Next, the defendant argued that "if there [was] no other supporting/corroborating information in the warrant affidavit that indicate[d] the alleged unlawful activity [was] occurring, the evidence recovered from a single garbage pull alone [could not] overcome the probable cause requirement under the Fourth Amendment . . . ." Id. at 10. In support of this assertion, the defendant cited, among others, United States v. Carswell, 996 F.3d 785 (7th Cir. 2021); United States v. McDuffy, 636 F.3d 361 (7th Cir. 2011); United States v. Leonard, 884 F.3d 730 (7th Cir. 2018); and United States v. Abernathy, 843 F.3d 243 (6th Cir. 2016). Id. at 10-14. The defendant argued that without Fenner's allegedly false statement, the only evidence from the trash pull was a very small amount of marijuana and a tie off bag with residue that tested positive for methamphetamine, with no identifiers linking those items to the defendant. Id. at 14. He argued that "law enforcement had absolutely no evidence that the defendant was trafficking in drugs, law enforcement never observed or had information from others that the defendant was using 2205 N. 11th Street as a drug trafficking place, nor did they have

10

information that someone else was using that residence as a drug trafficking place." Id. at 14.

The defendant pointed out that the evidence from the trash pull indicated that the roaches, bong and vape cartridge had been used in the past rather than suggesting that a continued presence of drugs in the house. Id. at 16. Including a link to the City of Sheboygan trash collection schedule, he argued that the city collected trash only once a week on Monday and asserted that the fact that law enforcement pulled the trash on Monday, May 13, 2019 "further discredit[ed] the notion that the evidence supports a conclusion of the probable presence of contraband in the residence." Id. The defendant also contended that the items could have been placed in the trash by someone visiting the house or passing by. Id.

B.    Government's Response (Dkt. No. 48)

The government responded that the defendant had failed to make the preliminary showing required for a Franks hearing "because the affidavit does not contain any misstatements." Dkt. No. 48 at 2. It also argued that because the search warrant was supported by probable cause, the court should deny the motion to suppress. Id.

By way of background (without attaching any supporting evidence), the government explained the history of the MEG unit's meth investigation and Fenner's role in it, the controlled buys from Cisler, the result of the search of Cisler's residence and Cisler's admission that he sold methamphetamine. Id. at 2-4.

11

The government discussed the calls between the defendant and Cisler, the fact that the defendant had provided money to Cisler while he was in jail, the fact that he had expressed concern about whether Cisler gave a statement to law enforcement, and the fact that the defendant had admitted that "we always knew there was a price to pay . . . for what we do." Id. at 4. The government also discussed the result of the garbage pull. Id. at 5.

The government argued that the defendant's conclusory, unsworn, "self-serving" statements fell short of the proof required for a Franks hearing. Id. at 8. It argued that the defendant's statement that Fenner knew or should have known that paragraph three of the affidavit misrepresented the contents of the jail calls was nothing more than a "[b]ald assertion[] of improper intent," insufficient to warrant a Franks hearing. Id. at 8-9. The government contended that the defendant's argument ignored the totality of the circumstances that Fenner knew. Id. at 9. It asserted that Fenner had been involved in the methamphetamine investigation of Cisler, which was what had prompted the review of the April 2019 jail calls. Id. The government pointed out that in listening to those calls, Fenner learned that the defendant seemed worried about what the police might know and whether Cisler had talked with police; he learned that the defendant had provided money to Cisler and others in the jail; he learned that someone identified as "Sebastian," who was in jail with Cisler, had been "getting" something from the defendant and Cisler; and he learned that the defendant believed that there was a price to pay for what "we" do. Id. at 9-10. The government argued that based on that information, Fenner

Case 2:20-cr-00162-PP   Filed 01/25/22   Page 12 of 31   Document 85

conducted the garbage pull, which produced evidence of drug dealing. Id. at 10.
The government asserted that nothing about the statement by Fenner in
paragraph three of the affidavit was false and that the defendant had not
demonstrated any falsehoods. Id. at 11.

The government also argued that, based on everything that Fenner knew
when he applied for the warrant, "there was a fair probability that evidence of
possession to distribute methamphetamine would be found by obtaining a
search warrant for the residence of [the defendant]." Id. It argued that it was
logical for Fenner to assume from the jail calls that Cisler and the defendant
were drug trafficking associates, and that the evidence from the garbage pull
showed that there was a "substantial chance of criminal activity being afoot
and a fair probability that evidence of that criminal activity may be found by
searching [the defendant's] residence." Id. at 11-12.

C.    Defendant's Reply (Dkt. No. 53)

The defendant replied that Fenner's own statements and observations
along with the recordings of the jail calls established a need for a Franks
hearing and stated that he anticipated offering the recordings of the jail calls
into evidence during the hearing. Dkt. No. 53 at 2. The defendant asserted that
the fact that the government disagreed with him on the transcription of the
calls was a dispute that required a Franks hearing. Id. at 2. The defendant
claimed that the reference to "Sebastian" "getting from us" in one of the jail
calls was a reference to commissary funds, not drug funds; he asserts that this
is clear when one listens to the call. Id. at 2 n.1.

13

The defendant asserted that the government had provided no evidence to support its claim that the defendant and Cisler were drug associates. Id. at 3. He asserts that the jail calls provide no indication that the two were associates. Id. The defendant asserted that mere communication with a known methamphetamine dealer is not enough to support probable cause. Id. at 3-4. And he reiterated that without the reference to the jail calls, the evidence of a single trash pull could not provide probable cause. Id. at 4.

## III.  Judge Dries's Order and Recommendation (Dkt. No. 58)

Judge Dries explained that a defendant is entitled to a Franks hearing only if he makes a "a 'substantial preliminary showing' that: (1) the affidavit contained a material false statement; (2) the affiant made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of probable cause." Dkt. No. 58 at 6 (quoting United States v. Maro, 272 F.3d 817, 821 (7th Cir. 2001), which quoted Franks v. Delaware, 438 U.S. 154, 155-156 (1978)). Judge Dries explained that to meet this substantial burden, the defendant must make allegations, accompanied by an offer of proof, that are more than conclusory and must be supported by more than a mere desire to cross-examine. Id. at 6-7 (citing Franks, 438 U.S. at 171). Judge Dries also discussed the requirement that a warrant affidavit establish probable cause. Id. at 7 (citing United States v. Peck, 317 F.3d 754, 755-56 (7th Cir. 2003)).

Judge Dries noted that the jail calls did not mention drug activity at the 11th Street residence or contain any mention of the residence. Id. at 9. But he

14

The defendant asserted that the government had provided no evidence to support its claim that the defendant and Cisler were drug associates. Id. at 3. He asserts that the jail calls provide no indication that the two were associates. Id. The defendant asserted that mere communication with a known methamphetamine dealer is not enough to support probable cause. Id. at 3-4. And he reiterated that without the reference to the jail calls, the evidence of a single trash pull could not provide probable cause. Id. at 4.

## III.  Judge Dries's Order and Recommendation (Dkt. No. 58)

Judge Dries explained that a defendant is entitled to a Franks hearing only if he makes a "a 'substantial preliminary showing' that: (1) the affidavit contained a material false statement; (2) the affiant made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of probable cause." Dkt. No. 58 at 6 (quoting United States v. Maro, 272 F.3d 817, 821 (7th Cir. 2001), which quoted Franks v. Delaware, 438 U.S. 154, 155-156 (1978)). Judge Dries explained that to meet this substantial burden, the defendant must make allegations, accompanied by an offer of proof, that are more than conclusory and must be supported by more than a mere desire to cross-examine. Id. at 6-7 (citing Franks, 438 U.S. at 171). Judge Dries also discussed the requirement that a warrant affidavit establish probable cause. Id. at 7 (citing United States v. Peck, 317 F.3d 754, 755-56 (7th Cir. 2003)).

Judge Dries noted that the jail calls did not mention drug activity at the 11th Street residence or contain any mention of the residence. Id. at 9. But he

14

determined that the defendant had not made the substantial preliminary showing warranting a hearing because "Investigator Fenner could still truthfully state that the jail calls had tipped him to 'possible' drug activity at [the defendant's] address." Dkt. No. 58 at 9. Judge Dries reached this conclusion because the jail calls *did* indicate that the defendant was involved with drugs, and he noted that the Seventh Circuit has "repeatedly and consistently stated that 'in the case of drug dealers, evidence is likely to be found where the dealers live.'" Id. (quoting United States v. Johnson, No. 20-CR-214, 2021 U.S. Dist. LEXIS 56435, 2021 WL 1139841, at *5 (E.D. Wis. Mar. 25, 2021), which quoted United States v. Lamon, 930 F.2d 1183, 1188 (7th Cir. 1991)). Judge Dries found that as an experienced law enforcement officer, Fenner "was simply making the same logical conclusion that courts make all the name, namely, that since [the defendant] was a drug dealer, it was reasonable to conclude that evidence of drug dealing or use would be found at his home . . . ." Id. at 9-10. He concluded, "once an officer develops reason to believe that an individual is involved with illegal drugs, under these circumstances it's not misleading to tell a judge that there is likely to be evidence of 'drug activity' at the dealer's home, particularly when he merely indicates that there is 'possible' drug activity there." Id. at 10. For this reason, Judge Dries found that nothing in Fenner's paragraph three statement was false. Id.

Judge Dries stated that the jail calls "clearly establish[ed]" that the defendant was in the drug business." Id. He noted that while Cisler had been in

15

jail on drug-related charges, he had called the defendant seven times in twenty

days—sometimes, multiple times a day. <u>Id.</u> He recounted that the defendant

had "apologized" to Cisler for Cisler's incarceration told Cisler that the

defendant had Cisler's back, gave Cisler money and seemed concerned that

Cisler had talked to police or was going to do so. <u>Id.</u> Judge Dries discussed the

fact that when Cisler told the defendant Cisler was in the jail with Sebastian,

the defendant said there "are so many people . . .  we are trying to take care of."

<u>Id.</u> Judge Dries also recounted that the defendant told Cisler that "we always

knew there was a price to pay . . . for what we do  . . . [T]o be honest, we've

gotten away with it for a long time . . . so it's bound to catch up. We gotta pay

to play." <u>Id.</u> at 10-11 (citing Dkt. No. 42 at 29).

Addressing the defendant's argument that Fenner's statement was

misleading, Judge Dries said that, even if it were misleading, it was not

material and the affidavit was still supported by probable cause. <u>Id.</u> at 11

(citing <u>Maro</u>, 272 F.3d at 821). He concluded that the third paragraph—

suggesting that the jail calls revealed drug activity at N. 11th Street—could be

eliminated and the affidavit still would establish probable cause. <u>Id.</u> Judge

Dries recounted how the fifth paragraph described the tie off with white residue

that tested positive for methamphetamine. <u>Id.</u> at 12. He recounted Fenner's

description of how the tie offs were evidence of drug activity because that is

how drugs are packaged for sale. <u>Id.</u> He noted that Fenner had found a plastic

sandwich bag with one of the corners cut off, which also was consistent with

the packaging of drugs. Id. Judge Dries opined that paragraph five was more specific and inculpating than paragraph three. Id.

Judge Dries addressed the defendant's argument that evidence from a single garbage pull could not constitute probable cause. Id. He explained that was not an accurate statement of what the issuing judge had before her; she had evidence that the officer had learned of drug activity while listening to jail calls and then had *confirmed* the drug activity with the garbage pull prior to asking for the warrant. Id. Judge Dries pointed out that the Seventh Circuit had *upheld* the searches in every case the defendant had cited, and that one of those cases noted that no Seventh Circuit case had addressed whether garbage pulls, by themselves, may establish probable cause to search a residence. Id. at 12-13 (citing Leonard, 884 F.3d at 734). He also noted that, unlike the cases the defendant had cited, the warrant in this case sought evidence of the *possession* of controlled substances. Id. at 13. Accordingly, Judge Dries denied the request for the Franks hearing and recommended that this court deny the motion to suppress. Id.

## IV. Defendant's Objection (Dkt. No. 60)

The defendant objects to Judge Dries's findings that (1) the investigator did not make an affirmative misrepresentation and (2) that the warrant was supported by probable cause. Dkt. No. 60 at 2, 3. The defendant argues that it was unreasonable for Judge Dries to assume that the defendant was in the drug business simply because the defendant spoke with Cisler seven times over the course of a month while Cisler was in jail. Id. at 2. He argues that even if

17

the defendant apologized to Cisler for Cisler's incarceration, told Cisler that the defendant had Cisler's back and seemed concerned about whether Cisler was cooperating, those things "do not indicate that the defendant was involved in the drug trade." Id. He asserts that family members and friends give "their incarcerated individuals" money, and communicate with them, all the time, and that does not mean they are involved in criminal activity. Id. The defendant also argues that Fenner had "absolutely no evidence that the defendant was a drug dealer." Id.

As to Judge Dries's conclusion that the defendant confirmed his involvement in Cisler's drug dealing during two of the calls, the defendant states, "making assumptions on the disputed contents of the jail calls without listening to the calls is not an appropriate finding of fact." Id. at 3. The defendant points out that Judge Dries conceded that there was no mention of 2205 N. 11th Street in the calls, and asserts that his finding that nothing in paragraph three was contradictory to that concession. Id. The defendant asserts that Fenner told the issuing judge that he learned of possible drug activity while listening to the jail calls and insists that that was a "misstatement." Id.

The defendant also takes issue with Judge Dries's finding that the affidavit would have supported a finding of probable cause without the challenged statement. Id. He says that without the reference to jail calls in paragraph three, nothing in the affidavit establishes that the defendant gave Cisler money while in jail. Id. While agreeing with Judge Dries that an alleged

misstatement must be material to qualify for a <u>Franks</u> hearing, the defendant insists that Fenner's misleading statement was material. <u>Id.</u> He also asserts that Judge Dries ignored his analysis of <u>United States v. Carswell</u>, 996 F.3d 785 (7th Cir. 2021) and <u>United States v. McDuffy</u>, 636 F.3d Id. 361 (7th Cir. 2011), as those cases related to trash pulls, and he argues that there is no authority providing that evidence from a single trash pull can constitute probable cause.

The defendant asks the court to hold a <u>Franks</u> hearing, grant his motion to suppress, and enter an order suppressing all evidence obtained directly or as a derivative of the warrant. <u>Id.</u> at 4-5.

**V.      Analysis**

   A.      <u>Standards of Review</u>

Judge Dries issued both an order and a recommendation. Dkt. No. 58. The defendant objects to both aspects of the decision, dkt. no. 60, but does not acknowledge or mention that separate standards govern this court's review of an order disposing of a non-dispositive motion versus a recommendation for a ruling on a dispositive motion. <u>See</u> <u>United States v. Jefferson</u>, No. 07-CR-09, 2009 WL 4549189, at *1 (E.D. Wis. Nov. 27, 2009) (reviewing magistrate judge's order denying <u>Franks</u> hearing under Fed. R. Crim. P. 59(a) and the recommendation on motion to suppress under Fed. R. Crim. P. 59(b)).

The defendant cites Fed. R. Crim. P. 59(a), which governs the referral of non-dispositive matters to a magistrate judge, dkt. no. 60 at 1; in this case, the motion for a <u>Franks</u> hearing was a non-dispositive motion. Parties have

fourteen days to file objections to a magistrate judge's order ruling on a non-dispositive motion, and "[t]he district court must consider timely objections and modify or set aside any part of the order that is *contrary to law or clearly erroneous.*" Id. (emphasis added).

Rule 59(b), however, governs the referral of dispositive motions, such as motions to suppress, to magistrate judges. Parties have fourteen days to file "specific written objections" to a magistrate judge's report and recommendation on a motion to suppress. Fed. R. Crim P. 59(b)(2). When reviewing a magistrate judge's recommendation, the district judge must review *de novo* the recommendations of the magistrate judge to which a party timely objects. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1).

B.     Order Denying Franks Hearing

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause." U.S. CONST. AMEND. IV. "Probable cause for issuance of a search warrant exists if there is 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Woodfork, 999 F.3d 511, 516 (7th Cir. 2021) (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983)). "The ability of the neutral and detached magistrate to determine probable cause depends on the accuracy of the information the police submit." United States v. Clark, 935 F.3d 558, 563 (7th Cir. 2019). For that reason, a warrant is not valid if the officer deliberately or

Case 2:20-cr-00162-PP   Filed 01/25/22   Page 20 of 31   Document 85

recklessly presents "false, material information," or omits material information from the affidavit. United States v. McMurtrey, 704 F.3d 502, 508 (7th Cir. 2013)).

To obtain a Franks hearing, the defendant must make a substantial preliminary showing (1) that the warrant contained false information; (2) that the false information was included in the affidavit intentionally or with reckless disregard for the truth; and (3) that the false information was necessary to find probable cause and issue the warrant. Id. at 511 (citing Franks, 438 U.S. at 155-56). "*Franks* hearings are 'rarely held' because '[t]hese elements are hard to prove.'" United States v. Dessart, 823 F.3d 395, 402 (7th Cir. 2016) (quoting United States v. Swanson, 210 F.3d 788, 790 (7th Cir. 2000)). A substantial preliminary showing as to the intentionality or recklessness of omissions requires either "direct evidence of the affiant's state of mind or circumstantial evidence that the affiant had a subjective intent to deceive based on the nature of the omissions." United States v. Glover, 755 F.3d 811, 820 (7th Cir. 2014). This evidence "must show that the officer submitting the complaint perjured himself or acted recklessly because he seriously doubted or had obvious reason to doubt the truth of the allegations." Woodfork, 999 F.3d at 518 (quoting United States v. Johnson, 580 F.3d 666, 670 (7th Cir. 2009)).

The defendant argues that Fenner knew or should have known that the following representations in the third paragraph of his affidavit "grossly misstated" the contents of the jail calls:

Your affiant obtained information regarding possible drug activity at 2205 N. 11th Street, in the City and County of Sheboygan, State of

21

> Wisconsin. While completing another investigation, Your affiant was listening to jail phone calls and learned of the possible drug activity at 2205 N. 11th Street.

Dkt. No. 42 at 20. The defendant focuses on Fenner's linking the possible drug activity to 2205 N. 11th Street, insisting that Fenner knew this statement was not true because he had listened to the jail phone calls and knew that there was no mention of 2205 N. 11th Street in them. In his motion, the defendant also represented that Fenner wrongly recounted one word in one of the phone calls, the April 21, 2019 recording; the defendant claims that the recording captures the defendant saying "you've gotten away with it for a long time," rather than Fenner's transcription of "we've gotten away with it for a long time." Dkt. No. 42 at 9.

Judge Dries did not commit clear error in concluding that the defendant had failed to make a substantial preliminary showing. The first sentence of paragraph three—"Your affiant obtained information regarding possible drug activity at 2205 N. 11th Street, in the City and County of Sheboygan, State of Wisconsin"—is not false. By the time he went to the issuing judge to ask for a warrant, Fenner *did* have information regarding possible drug activity at that address. Fenner had listened to the jail phone calls between Cisler and the defendant, several of which circumstantially indicated that the defendant was involved with whatever Cisler had been involved with—which was possession and sale of methamphetamine, as Fenner knew. If nothing else, why would the defendant repeatedly try to verify that Cisler did not talk to or cooperate with the police if he was not concerned about his own possible exposure? Once

22

Fenner figured out the defendant's identity (when the defendant helpfully identified himself and spelled his name on one of the calls), Fenner determined where the defendant lived and pulled the trash from his curb, finding evidence of possession of both marijuana and methamphetamine.

The second sentence in paragraph three—"While completing another investigation, Your affiant was listening to jail phone calls and learned of the possible drug activity at 2205 N. 11th Street"—begins with a subordinate clause that explains when the discovery occurred. This portion of the sentence is not false—Fenner *did* learn the information about possible activity on North 11th Street while completing another investigation.

The remainder of the second sentence says that Fenner was "listening to the jail phone calls and learned of possible drug activity at 2205 N. 11th Street." It is this portion of the sentence that provides the basis for the defendant's argument. The defendant argues that despite knowing that there was no mention of 2205 N. 11th Street in the jail calls, Fenner strung together the sentence in a way that implied that he had heard about or learned about the address from the calls. He assumes—without any evidence to support the assumption—that Fenner not only did this, but did it deliberately or recklessly with the intent to deceive the issuing judge. This unsupported assumption is a far cry from perjury, or from recklessly disregarding the truth. And while the defendant does not identify any reason for Fenner to have perjured himself or recklessly disregarded the truth, presumably it would have been because Fenner somehow doubted that he could show that there was information of

23

possible drug dealing at that address. Yet he *had* such information. He did the garbage pull. He had evidence of marijuana possession and methamphetamine possession, discovered in garbage bags at the curb of that residence. Why would he need to lie about what caused him to conduct the garbage pulls?

The defendant also argues that Fenner inaccurately transcribed one word of the April 21, 2019 conversation. Dkt. No. 42 at 6. Fenner's report summarizes the conversation as follows:

> CISLER: I'm hoping to get that drug shit court comes through soon so I can get the fuck out of here
>
> DEFENDANT: yeah, I know buddy, we always knew there was a price to pay, you know what I mean, for what we do, you know what I'm saying, to be honest, *we've* gotten away with it for a long time, for whatever, you know partying and shit
>
> CISLER: right
>
> DEFENDNT: so it's bound to catch up, we gotta pay to play.

Dkt. No. 42 at 29 (emphasis added). In his brief supporting the motion, the defendant asserts that the "actual recording depicts the defendant saying to Cisler 'you've gotten away with it for a long time.'" Dkt. No. 42 at 9.

Again, the defendant assumes—with no supporting evidence—that this was not an error, but a deliberate mis-transcription by Fenner. And again, the defendant does not explain why Fenner would have bothered to deliberately change this one word given all the other things the defendant said—his repeated concern about whether Cisler had cooperated, his providing Cisler with money, his statements that "we knew there was a price to pay" "for what we do" and "we gotta pay to play." Dkt. No. 42 at 29. Not only has the

24

defendant provided no evidence to support his claim that Fenner deliberately wrote the wrong word, but he provides no explanation for why Fenner would have needed to do so.

At best, the defendant has pointed out inartful drafting on Fenner's part and a small transcription error. The defendant has presented no direct evidence of Fenner's state of mind or showed any intent to deceive, and the evidence Fenner had indicates that there was no need for him to lie or be reckless with the truth. Because Judge Dries did not commit clear error in concluding that the defendant had not made the necessary preliminary showing for a <u>Franks</u> hearing, the court will not reverse that ruling and will not order a <u>Franks</u> hearing.

      C.    <u>Probable Cause</u>

Even if the defendant had demonstrated that Fenner made a material false statement or misrepresentation, he would have been required to demonstrate that absent the false statement or misrepresentation, probable cause would not have existed. <u>United States v. Vines</u>, 9 F.4th 500, 510 (7th Cir. 2021). "[D]eliberately inaccurate representations do not invalidate a warrant if the truthful statements establish probable cause." <u>United States v. Ferra</u>, 948 F.2d 352, 353 (7th Cir. 1991); <u>see also</u> <u>United States v. Gray</u>, 410 F.3d 338, 344 (7th Cir. 2005) ("A search warrant obtained, in part, with evidence which is tainted can still support a search if the 'untainted information, considered by itself, establishes probable cause of the warrant to issue.") (quoting <u>United States v. Oakley</u>, 944 F.2d 384, 386 (7th Cir. 1991)).

25

The defendant objects to Judge Dries's conclusion that, even if one were to exclude the statements in paragraph three, the affidavit would support a finding of probable cause. He asserts that if the court removes the paragraph three statements, the remaining evidence came from a garbage pull and that evidence, by itself, is insufficient. Dkt. No. 42 at 10.

The court first addresses the defendant's complaint that Judge Dries ignored his discussion of two Seventh Circuit cases—Carswell and McDuffy. In Carswell, the defendant challenged a trash pull that provided part of the basis for law enforcement's decision to seek a search warrant; the defendant was being investigated for drug trafficking and firearms crimes. The Seventh Circuit wrote only two paragraphs on the issue, and the court is at a loss to understand how those two paragraphs help the defendant here. The court wrote:

> The trash pull found drugs, drug residue, drug packaging materials, and a receipt for a firearm and ammunition, providing substantial reason to think one might find drug-distribution and firearm evidence in the Carswell residence. See *United States v. McDuffy*, 636 F.3d 361, 364 (7th Cir. 2011) ("[E]ven a tiny bit of discarded drugs increases the likelihood that police will find more in the home."); *United States v. Billian*, 60 F.3d 791, 794 (7th Cir. 2010) (small quantities of marijuana in defendant's trash indicated that there was marijuana in his house, not that small quantities were all he possessed).

> Carswell points out that two trash pulls with drug evidence would be more compelling than just one because of the possibility that someone else could have dropped her trash in the bins at the end of his driveway. Cf. *United States v. Leonard*, 884 F.3d 730, 734-35 (7th Cir. 2018) (two trash pulls, a week apart, both testing positive for cannabis, were sufficient to establish probable cause for search warrant). We suppose it is possible that other people dropped their drug-related trash in Carswell's bins that particular week. But that possibility does not necessarily defeat probable cause, which deals

26

with, well, probability, not certainty. See *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) ("theoretically possible" scenario submitted by defendant was not enough to negate existence of probable cause). (Not to mention the receipt for [the defendant's girlfriend's] purchase of the CZ Scorpion pistol and ammunition, and the ample evidence linking Carswell and [his girlfriend] to the . . . residence.)

Carwell, 996 F.3d at 792.

Carswell does not support the defendant's assertion that evidence from a single trash pull cannot support probable cause. In fact, it negates his argument that someone visiting or walking by could have put the marijuana and methamphetamine evidence in his garbage. As the Seventh Circuit said in Carswell, that certainly is a possibility, but probable cause deals with *probabilities*, not theoretical possibilities.

In McDuffy, the trash pull yielded "a small flake of a leaf that field-tested positive for the active ingredient in marijuana, tetrahydrocannabinol." McDuffy, 636 F.3d at 362. When the law enforcement agent wrote up the affidavit for the search warrant, he did not specify how much marijuana was found in the trash pull. Id. at 363. The defendant asked for a Franks hearing. Id. He asserted that "if the state judge had understood just how little marijuana was found," the judge wouldn't have found probable cause to search his home. Id. The Seventh Circuit concluded that the defendant could not prove materiality, stating that

> [e]ven a very small quantity of marijuana in the trash provided sufficient reinforcement of the other information in the affidavit indicating a reasonable likelihood that McDuffy was dealing drugs from his home. Each individual detail in the affidavit would not have been sufficient by itself to support a finding of probable cause, but the details were mutually reinforcing. The whole was greater than the sum of the individual details.

27

Id.

Here, Fenner found more than a mere "flake" of marijuana in the trash. He found loose, green, leafy material that tested positive for marijuana; roaches that tested positive for marijuana; three plastic bag tie-offs and a sandwich baggie with a corner cut off; a mini secure digital card; a broken bong; cigar wrappers; a vape cartridge package that indicated it was for THC; and mail associated with April Detrick, whom Fenner had learned lived at 2205 N. 11th Street along with the defendant. And he found these items in three different trash bags, making less "possible" the defendant's speculation that someone visiting or walking by could have dropped their drug paraphernalia into the defendant's garbage.

Neither Carswell nor McDuffy support the defendant's confident assertion that evidence from a single garbage pull cannot constitute probable cause. That makes sense—probable cause is a fact-intensive determination. A single garbage pull of four garbage bags, each containing multiple kilogram wrappers with cocaine residue and identifying information for a residence, could provide more than enough probable cause for a warrant to search the residence for evidence of drug trafficking, while multiple garbage pulls that each contained mere flakes of marijuana might not provide probable cause to search a residence for the same offense. Three years ago, the Seventh Circuit in Leonard acknowledged that "[n]o Seventh Circuit case has addressed whether trash pulls *by themselves* may establish probable cause to search a residence." Leonard, 884 F.3d at 734. There, the Seventh Circuit affirmed the probable

28

cause determination where the drugs contained in the trash bags bore a sufficient indicia of residency. Id. But it is likely that when such a Seventh Circuit case does come along, it will not establish definitively that one trash pull is or is not sufficient to establish probable cause—it will look at the details of the evidence gleaned from the single trash pull.

The probable cause standard is a "practical, nontechnical conception." Gates, 462 U.S. at 231 (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)). A finding of probable cause turns on the specific facts and an assessment of probabilities rather than "a neat set of legal rules." Id. Reviewing courts give "great deference" to the conclusion of the judge who issued the warrant, Leonard, 884 F. 3d at 733 (quoting United States v. McIntire, 16 F.3d 576, 578 (7th Cir. 2008). The issuing judge is "allowed to draw reasonable inferences about where evidence is likely to be kept,' and he 'need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.'" United States v. Curry, 538 F.3d 718, 729 (quoting United States v. Sleet, 54 F.3d 303, 306 (7th Cir. 1995)).

Even if the court ignores the statement in paragraph three that Fenner "was listening to jail calls and learned of the possible drug activity at 2205 N. 11th Street," the affidavit provides probable cause. Fenner stated that he learned of drug activity (regardless of its location) while listening to the jail phone calls. That is not a false statement; as the court has discussed, the defendant said many things when talking to Cisler that gave Fenner reason to believe that the defendant and Cisler were engaged in drug activity. Fenner

29

confirmed his suspicions that the defendant was engaged in drug activity with the garbage pull. He found evidence of tie offs, a plastic sandwich bag with the corner cut off and residue that tested positive for methamphetamine. Dkt. No. 42 at 21. He explained that in his experience, the ties offs and the sandwich bag with one of the bottom corners cut off were used in the packaging/sale of illegal drugs. Id. And the warrant he sought was for *possession* of controlled substances, not trafficking.

As was the case in Carswell, the affidavit here referenced more than a single garbage pull. As was the case in Leonard, there were indicia of reliability (identifiers for Detrick) tying the garbage to the residence. Even assuming that it was misleading for Fenner to mention the jail calls and the address in the same sentence, omitting the address does not deprive the affidavit of probable cause.

## VI. Conclusion

The court **OVERRULES** the defendant's objections. Dkt. No. 60.

The court **AFFIRMS** Judge Dries's order denying the defendant's request for a Franks hearing. Dkt. No. 58.

The court **ADOPTS** Judge Dries's recommendation that this court deny the defendant's motion to suppress. Dkt. No. 58.

The court **DENIES** the defendant's motion to suppress. Dkt. No. 41.

The court **ORDERS** that by the end of the day on **February 25, 2022**, the parties must file a joint status report advising the court of their anticipated next steps—whether they wish the court to calendar a scheduling conference to

discuss trial dates or whether they anticipate that the case will be resolved short of trial.

Dated in Milwaukee, Wisconsin this 25th day of January, 2022.

BY THE COURT:

HON. PAMELA PEPPER
Chief United States District Judge